## Case No. 7,350.

### The JOHN HENRY.

[3 Ware, 264.] [1]

District Court, D. Maine. Dec., 1860.

[1] [Reported by George F. Emery, Esq.]

Mr. Cushing, for libellants.
Mr. Shepley, for respondents.

WARE, District Judge. The ship John Henry, of Bath, J. Carver, master, of about 550 tons burthen, sailed from that port for Savannah on the 10th of August last, on a south-west course, and about the same time, the schooner Wm. A. Richardson, J. Bailey, master, of 170 tons burthen, sailed from Newburyport for Porto Rico on a course S. E. by south, half east. They were sailing on converging lines, and on the 15th, and between nine and ten in the morning, came in sight of each other nearly abreast at about one mile or three-fourths of a mile distant, in latitude 41, 34 north, and longitude 69, 01 west. There had been a heavy fog during the night, which partially cleared away in the morning; and the wind being northeast, blowing a breeze, of between six and eight knots an hour abaft the beam of each, both had a fair wind. If they continued their course there would be manifest danger of a collision. The ship, having the wind. luffed into a course about south and the schooner bore away into the same. Both continued on that course for some time, but how long is uncertain, and there is some uncertainty, at least the counsel are not agreed, whether at this time they came within speaking distance. The ship then luffed more into the wind, and the schooner bore away more, but the latter soon came into her south course, while the ship hauled to the wind longer; but after, gradually wore around, and consequently must have come into a course nearly parallel with the schooner. Exactly how long they continued this course is uncertain. Either when they first met or at this time the schooner hailed the ship. She continuing to luff and the schooner continuing her southerly course without changing it, or coming more into the wind, as the testimony from the schooner is, the vessels thus came in collision, so that the larboard bow of the ship struck the larboard quarter of the schooner at an acute angle, cutting her down in such a manner that in a short time she filled with water. The crew of the schooner were saved on board the ship, and her wreck, two or three days afterwards, was taken up by another vessel and towed into another port and there sold for salvage. For this collision thus taking place in open day, with sea room enough, a fair wind for both vessels and a moderate breeze, the parties have two theories. The first, that of the schooner, is that she, after for a short time

bearing away before the wind. hauled into a course due south. and steadily kept that without change, while the ship. after luffing for a time, came down before the wind and struck her while sailing in that course. It is admitted that the man at the schooner's wheel left a moment before the collision, which would have made it haul more into the wind. But this was when a collision became inevitable and could not have led to it. Exactly how long a time intervened between the vessels' first coming in sight, and that of the collision. cannot be ascertained. but from the testimony and the admitted facts it must have been as much as fifteen minutes.

To this theory the counsel for respondent objects that the acknowledged facts are irreconcilable with it. The schooner sailing on nearly a right line due south, the ship luffing into the wind and then coming down on this line, must have sailed in a curved line and had a longer distance than the schooner. If they sailed nearly equally, the schooner must have been ahead sufficiently to have allowed another vessel to pass under her stern. It is an admitted fact that the schooner, with a free wind. out-sailed the ship, and from all the testimony as well as the undisputed facts in the case. that she sailed about as fast under the lee of the ship's sails. when on a course nearly parallel. As this continued about fifteen minutes and the schooner was running about seven miles an hour. allowing for the ship making a circuitous course, she must have been nearly a quarter of a mile ahead. They must. therefore. have met in a point between the two courses in endeavoring to pass each other's tracks. Both parties have illustrated the theories by diagrams, but I can see no sufficient answer to this argument. It rests on certainties. and my opinion is that the vessels met in endeavoring to cross each. other's track. If this be so. the ship must have borne away before the wind and the schooner have luffed into it too soon, and there have been faults. or error of judgment. on one side or the other or both. It becomes important. therefore. to determine in whom it lay; for an error of judgment is imputed as a fault. The direct testimony is. of necessity, confined to the two vessels, and if that be followed on either side exclusively. this might not be difficult. as each would naturally endeavor to throw the blame on the other. Accordingly. on the side of the schooner. it is said, that while she kept her course due south. the ship. in endeavoring to cross her track by coming under her stern. bore away too soon. But as from all the evidence the vessels sailed at nearly the same rate. if the schooner had kept steadily her course of due south, she must have been, at this time. sailing at the rate of six or seven miles. more than her length in advance, while the ship was crossing down from more than speaking distance. They could not have met without the schooner changing her course. nor could

they have met without the ship changing. The only place they could have come together was in the space between the two. And this agrees with the testimony of both sides when compared. For while on the one the witnesses say that the schooner luffed to run across the ship's bows, on the other it is said that the ship bore away to come under the schooner's stern.

In this state of the case the cause of the collision may have been an error of judgment on the one side or the other or on both, or from the testimony, which is all we have for our guide. the cause may be uncertain. That two vessels meeting in the open sea, in broad daylight, with a moderate and fair wind for both, and both equally bound and desirous to keep out of the other's way. cannot come into collision without errors somewhere. is clear. An eye witness. seeing the manoeuvres of both vessels from a point out of danger, might see where the fault lay. and would give a more impartial, if not sounder judgment than could be obtained from either of the vessels in danger. But this is not our situation. We can form our opinions only from the evidence, and the witnesses on each side clear their own vessel and charge the blame on the other, and on each side the witnesses are equally credible. The only conclusion that I can extract from this conflict of testimony is, that there were errors of judgment on both sides, and this antecedent to all evidence is the most probable solution. If this was not the case, the fault is inscrutable. In the hurry, excitement, and perturbation of the moment, either. not knowing what the manoeuvre of the other might be, without an impeachment of his intention, might make a mistake. In either of these cases, of faults on both sides or the fault inscrutable, the rule of the maritime law is the same. the damage done shall be divided equally between the two. The rule of the common law, as is. I think. correctly stated by Lord Campbell, is different. Dowell v. General Steam Nav. Co., 32 Eng. Law & Eq. 158. The plaintiff can recover only on the strength of his own title and not on the weakness of that of his adversary. That law had its foundations laid in an early age, when witnesses and parties were more unscrupulous than in this, when the lessons of experience are better understood. had a great fear of injustice on the part of prosecutors and a particular dread of the slippery conscience of witnesses. It required. therefore, of the plaintiff to come with clean hands. and it would be a conclusive objection to him that the injury was caused in part by his own fault. The maritime law which seeks less logical consistency than substantial justice, and is governed in part also by the general interest of commerce on the high seas. when there are faults on both sides. or the fault is inscrutable. divides the loss between the parties. The Catharine

v. Dickinson, 17 How. [58 U. S.] 173; 1 Pears. Mar. Law, 122. The decree will therefore be, that the whole damages to both vessels be put into one mass and equally divided between them. A court of admiralty has full jurisdiction over costs, either to give, divide, or refuse them altogether, and has sometimes gone so far as to throw them on the prevailing party, when he has evidently sought the litigation. But in the present case I can see no sufficient reason for departing from the common rule. The costs will therefore follow the damages, and the amount of these will be referred to a commissioner to report.